IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:23CR00237-003-CJN |
| ) | |
| KYLE KUMER, ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S SENTENCING MEMORANDUM**

COMES NOW defendant Kyle Kumer, by and through his attorneys, and pursuant to Fed. R. Crim. P. 32, respectfully submits this Sentencing Memorandum for the Court's consideration. The sentencing is scheduled for May 17, 2024 at 11:00 a.m. This Memorandum is filed to aid the Court in imposing a sentence which is sufficient but not greater than necessary to serve the objectives of sentencing as set out in 18 U.S.C. § 3553(a). Mr. Kumer respectfully requests a sentence of probation or a non-custodial sentence with conditions the Court deems appropriate. Mr. Kumer further requests that the Court follow the parties' recommendation and order him to pay restitution in the amount of $2,000 consistent with the terms of his plea agreement, and consistent with the amount he will tender as full restitution at sentencing.

**I.    INTRODUCTION**

On January 31, 2024, Mr. Kumer entered a plea of guilty to Count One of the superseding indictment charging him with civil disorder and aiding and abetting in violation of 18 U.S.C. §§ 231(a)(3) and 2. The plea of guilty was entered pursuant to a written plea

1

agreement between the defendant and the United States. The Court accepted the defendant's guilty plea and ordered the preparation of the Presentence Investigation Report (PSR) by the probation office. The government submitted one objection to the draft report regarding the applicability of § 2A2.4(b)(2) of two levels as referenced in the PSR at ¶ 55a. The defendant preserved his right to object to the applicability of § 2A2.4(b)(2) in the Plea Agreement. (See, Plea Agreement Letter at pg. 3, PSR ¶¶ 14, 17) Additionally, the defendant provided certain clarifying information concerning Mr. Kumer's wife's medical condition which was inserted into ¶ 79 of the PSR. On May 10 2024, the probation office submitted the final PSR. This sentencing memorandum pursues the defendant's preserved objection, and is consistent with *United States v. Hunter*, 809 F.3d 677 (D.C. Cir. 2016).

If Mr. Kumer's objection to the applicability of § 2A2.4(b)(2) is sustained, then the total offense level is 11, Criminal History I, with a resulting guideline range of 8-14 months. If Mr. Kumer's objection to the applicability of § 2A2.4(b)(2) is overruled, then the total offense level remains at level 13, Criminal History I, with a resulting guideline range of 12-18 months. See, PSR at ¶ 128. Within Zone C, a sentence of imprisonment can be imposed, or

> (2) a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention according to the schedule in Subsection (a) provided that at least one-half of the minimum term is satisfied by imprisonment.

In short, Mr. Kumer will seek a downward departure or variance to a non-custodial sentence, but the court could also "impose a guideline split sentence" and not a pure custody sentence as requested by the government.

## II.     OBJECTION AFFECTING THE GUIDELINE RANGE - § 2A2.4(b)(2)

In the Plea Agreement, the defendant preserved the right to object to the applicability of U.S.S.G § 2A2.4(b)(2).  The draft PSR did not include this particular guideline adjustment, but the government objected and the final PSR adopted the government's position.  (See, PSR at ¶ 14, and Addendum at p. 27).  Paragraph 50a of the PSR summarizes the government's argument supporting the application of § 2A2.4(b)(2).  Specifically, the government provided information to the PSR writer that "the defendant joined a group of individuals who were actively involved in pushing Officer D.H.  As a result of these actions, Officer D.H. was crushed between the crowd and side of door frame."  (PSR at ¶ 50a)  In reply, defendant objects to ¶¶ 50a, 55a and the related guideline calculations because Mr. Kumer did not cause the bodily injury to D.H., and it was also not reasonably foreseeable to him that officer D.H. was being injured.  To be clear, there is no factual dispute that D.H. was injured. Rather, this objection to the applicability of § 2A2.4(b)(2) rests on the argument that this injury was not caused by this defendant.  Nor was this injury reasonably foreseeable to this defendant.

Authority for this objection stems from the analysis by the Honorable John D. Bates, Untied States District Judge for the District of Columbia in the context of the Stephanie Hazelton sentencing, Case No. 21-00030 (JDB).  In *Hazelton*, an objection was raised as to both § 2A2.4(b)(1) (physical contact), and § 2A2.4(b)(2) (bodily injury). Judge Bates concluded that the injuries were too attenuated to support the applicability of § 2A2.4(b)(2). The court generally discussed the issues at pp. 20-24 of the hearing transcript. (Applicable portions of the *Hazelton* Sentencing Transcript at pp 1-53 are attached as Exhibit A.)  The sentencing court conducted a factual and legal analysis as to that particular defendant's

3

conduct. The court also noted in situations like the January 6th incident the applicability of § 1B1.3(a)(1)(B) should always be carefully analyzed in order to decide whether the conduct not directly attributed to a particular defendant should be applied.

In further explanation, the government appears to argue that either prong of § 1B1.3 captures the applicability of § 2A2.4(b)(2). However, § 1B1.3 is divided into two distinct categories. The first category, § 1B1.3(a)(1)(A), addresses acts or omissions "*caused*" by a particular defendant. The second category, § 1B1.3(a)(1)(B), considers "jointly undertaken criminal activity" and requires that other more inclusive prongs be scrutinized.

Under the first category, § 1B1.3(a)(1)(A), Mr. Kumer did not "cause" any bodily injury. The concept of causation is carefully examined in *Burrage v. United States*, 571 U.S. 204 (2014). In *Burrage,* the defendant was charged with violating 21 U.S.C. § 841(b)(1)(C), which subjects heroin dealers to an enhanced sentence if "death or serious bodily injury *results from* the use of such substance." *Id.* at 209 (quoting 21 U.S.C. 841(a)(1), (b)(1)(A)-(C)). Burrage sold heroin to the victim who died of "mixed-drug intoxication" shortly after injecting the heroin. *Burrage*, 571 U.S. at 206-208. Neither the pathologist who performed the autopsy nor the toxicologist who tested the victim's blood could say that the victim would not have died "but for" his use of the heroin supplied by Burrage. *Id.* Instead, they could say only that the heroin was a "contributing factor." *Id.* Justice Scalia wrote for the court and stated:

> [A]t least where use of the drug distributed by the defendant is not an independently sufficient cause of the victim's death or serious bodily injury, a defendant cannot be liable under the penalty enhancement

4

>provision of 21 U.S.C. § 841(b)(1)(C) unless such use is a but-for cause of the death or injury.

*Id.*

Justice Scalia implied that the same interpretation would be required of any federal sentencing argument that includes causation as a prerequisite, at least in the absence of some textual or contextual indication to the contrary. *Id.* at 211-212. By analogy, this same type of analysis should apply to the first prong of § 1B1.3(a)(1)(A). This defendant's advisory sentencing range should not be "increased" for allegedly "causing" bodily harm because there is no evidence suggesting causation.

A "but for" causation requirement is required by the traditional rule that courts should "construe the statute in light of the background rules of the common law…." *Staples v. United States,* 511 U.S. 600, 605 (1994) (citing *United States v. U.S. Gypsum Co.,* 438 U.S. 422, 436-37 (1978)). As the Supreme Court stated in *Burrage*, "[t]he Model Penal Code reflects this traditional understanding; it states that '[c]onduct is the cause of a result' if 'it is an antecedent *but for* which the result in question would not have occurred.' § 2.03(1)(a). That formulation represents '*the minimum* requirement for a finding of causation when a crime is defined in terms of conduct causing a particular result.' Explanatory Note (emphasis added); *see also United States v. Hatfield*, 591 F.3d 945, 948 (C.A.7 2010) (but for "is the minimum concept of cause"); *Callahan v. Cardinal Glennon Hospital*, 863 S.W.2d 852, 862 (Mo.1993) (same)." *Burrage, id.* at 211. And the basic meaning of "but for" is "[t]he cause without which the event could not have occurred." *Black's Law Dictionary* 250 (9th ed. 2009).

5

In *Burrage,* the Supreme Court rejected the "contributing cause" approach advanced by the government in applying the phrase "results from" as used in 18 U.S.C. § 841 to increase the mandatory minimum sentence available when death results from the defendant's unlawful distribution of heroin. "Taken literally, a 'contributing-cause' test would treat as a cause-in-fact every act or omission that makes a positive incremental contribution, however small, to a particular result." *Burrage, id.* at 217-218. The uncertainty of how important or how substantial a cause must be to qualify as 'contributing cause' "cannot be squared with the beyond-a-reasonable-doubt standard applicable in criminal trials or with the need to express criminal laws in terms ordinary persons can comprehend." *Burrage, id.* at 218 *citing United States v. L. Cohen Grocery Co.,* 255 U.S. 81, 89-90 (1921). And yet, the government herein argues for a guideline sentencing increase even though causation is not established.

Under the second category, § 1B1.3(a)(1)(B), the acts of others were *not* within the scope of, and in furtherance of, and reasonably foreseeable to Mr. Kumer. <u>Commentary</u> Application Notes 3(A) through (D) are helpful. Note 3(B) reads, in part, "Acts of others that were *not* reasonably foreseeable to the defendant, are *not* relevant conduct under Subsection (a)(1)(B)." Note 3(D) reads, in pertinent part, that the court must determine if the "conduct of others was within the scope of, and in furtherance of, the jointly undertaken criminal activity [and] was reasonably foreseeable with that criminal activity." Mr. Kumer denies that it was reasonably foreseeable to him that Officer D.H. would suffer any bodily injury under the facts as he understood them to be. To be sure, there was pushing by this defendant and Mr. Kumer generally participated in the "heave ho" as described. However, this defendant was not aware of the injury to D.H., nor was he near the actual location where D.H. received his injury. Nor

6

was the injury contemplated by any "jointly undertaken activity." The analysis and examples in the Commentary under Note (C), (v) and (vi) are helpful in explaining this point.

If the court sustains the guideline objection regarding § 2A2.4(b)(2), Mr. Kumer's Total Offense Level becomes 11, with an advisory sentencing range of 8-14 months within Zone B. Pursuant to § 5C1.1(c), if the applicable guideline ranges places a defendant in Zone B, then a sentencing court may (among other options) impose the following:

> (2) a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention according to the schedule in subsection (3), provided that at least one month is satisfied by imprisonment; or

> (3) a sentence of probation that includes a condition or combination of conditions that substitute intermittent confinement, community confinement, or home detention for imprisonment according to the schedule in subsection (e).

Assuming that this honorable court sustains Mr. Kumer's objection to § 2A2.4(b)(2), Mr. Kumer respectfully suggests a sentence other than imprisonment is appropriate pursuant to § 5C1.1(c) even without any consideration of the applicability of a departure or variance.

### III. FACTORS FOR CONSIDERATION IN IMPOSING SENTENCE

There are several mitigating sentencing factors that support Mr. Kumer's request for a non-custodial sentence. Depending upon the court's determination of the ultimate guideline range either a departure and/or variance could be used by this court. Either procedural tool is requested to achieve a non-custodial sentence and would be a fair and reasonable sentence in light of the sentencing objectives set forth in Title 18 U.S.C. § 3553(a)(2).

In *United States v. Booker,* 543 U.S. 220 (2005), the Supreme Court held that the Sentencing Guidelines should be applied in an advisory fashion to meet constitutional

demands. *Id.* at 258.  In *Kimbrough v. United States*, 552 U.S. 85 (2007), the Supreme Court pointed out that the "[g]uidelines, formerly mandatory, now serve as one factor among several courts must consider in determining an appropriate sentence." *Kimbrough* at 565.  This holding extends the decision in *Gall v. United States*, 552 U.S. 38 (2007), that all sentences that are either within or outside the Guidelines are entitled to some deference or abuse of discretion standard. Stated differently, the Guidelines standing alone may not give due consideration to mitigating factors under 18 U.S. C. § 3553(a).  Under *Gall, Booker, Kimbrough* and their progeny, this Court's overriding duty is to fashion an individualized sentence that is sufficient but not greater than necessary to achieve the sentencing goals of § 3553(a). *United States v. Gray*, 577 F.3d 947, 950 (8th Cir. 2009) (quoting 18 U.S.C. § 3553(a)); *see also United States v. Butler*, 594 F.3d 955, 967 (8th Cir. 2010) (same). In fashioning such a sentence, this Court looks to the factors set forth in 18 U.S.C. § 3553(a)(1) through (6). In determining a sentence, the Court need only show that it considered the parties' arguments and exercised the Court's authority in a reasoned manner. *See United States v. Gonzalez*, 573 F.3d 600, 607 (8th Cir. 2009). Ultimately, a Court's sentencing decision is subject to a 'deferential abuse-of-discretion standard.' *Id.* (internal citations omitted).  In short, the advisory sentencing guidelines are only a starting point. Any sentencing court must also consider all other sentencing factors under 18 U.S.C. § 3553(a).

### IV.   SENTENCING CONSIDERATIONS UNDER 18 U.S.C. § 3553(a).

**1.   The History and Characteristics of the Defendant Support the Request for a Below Guideline Sentence.**

The Court is required to consider the defendant's history and characteristics prior to imposing sentence. 18 U.S.C. § 3553(a)(1).  Mr. Kumer's history and characteristics are set forth in Part C, ¶¶ through 72 – 113 of the PSR.

Mr. Kumer is 44 years old.  He was born in South Carolina but his family moved to the Kansas City area when he was 2.  His childhood was somewhat tumultuous given that his parents repeatedly separated and reunited.  Eventually his parents were separated, and he primarily resided with his mother who at times struggled financially to provide for the family.  Mr. Kumer relocated often as a child and attended many different schools.  Even with the upheaval he experienced in his youth, Mr. Kumer described his childhood as "pretty normal" as he found a supportive community within his church youth group.  (PSR at ¶ 77).

Mr. Kumer has been married to his wife for 10 years.  He has a step-daughter whom he loves and supports.  Both Mr. Kumer and his wife are gainfully employed. While the family is generally healthy, Mrs. Kumer suffers from a condition known as misophonia which was diagnosed in 1990.  Stated simply, misophonia is an affective-processing disorder characterized by strong negative emotions in response to everyday sounds.  She cannot drive or go into congested places such as grocery stores because she can respond with intense anxiety, shaking, shortness of breath and even fainting.  Mr. Kumer supports his wife by running errands for the household so that she does not have to enter busy places, such as grocery stores.  Her condition can be minimized by wearing headphones and staying away from busy and congested places.

Mr. Kumer received his high school diploma from Johnson County Community College. He learned on-the-job skills as a sound engineer. He has owned his own silkscreen printing business since 2003. As evidenced by the education and employment history sections of the PSR, Mr. Kumer is not in need of educational or vocational training.

Mr. Kumer has no history of drug or alcohol use or misuse. He does not need counseling or treatment.

Mr. Kumer respectfully suggests that another important factor to consider when analyzing whether a sentence of incarceration is appropriate is the effect a sentence of incarceration would have on Mr. Kumer's business and its importance to his family. Mr. Kumer is the founder and creative leader of his business which he founded in 2003. Merch Monster is a silkscreen printing business. He is the sole employee and earns his entire income from the business. Mr. Kumer has made and sustained numerous business contacts that contribute to the success of his business. Importantly, as the sole employee, Mr. Kumer is the only person with the knowledge, skill, experience and relationships to run the business of Merch Monster and to meet the exacting requirements of its customers. He also manages the financial affairs of the business. It is distinctly possible that the business that Mr. Kumer has built and maintained and that contributes to the welfare of his family will cease to exist if Mr. Kumer serves a custodial sentence. (See, PSR at ¶ 96.)

Mr. Kumer is stable and has the tools to complete a non-custodial sentence satisfactorily. He has the support of his wife and child and other family members. He also has many supportive friends and colleagues within his church community who believe in and support him.

Mr. Kumer has offered letters in support, attached hereto as Exhibit B.  The letters include one from a close friend, M. Opara, who described Mr. Kumer's participation in an outreach ministry to children in allow-income housing complex in which he coached youth in flag football and other sports.  Mr. Opara wrote of his steadfast belief that Mr. Kumer stands for much more than what he demonstrated on January 6, 2021.  "…he is not defined by the worst mistake of his life.  Mr. Kumer will redeem himself.  He will use this mistake as a launch board towards teaching the youth he sincerely cares about how one mistake can have lifelong ramifications."

Another friend, B. Moore, wrote of his interactions with Mr. Kumer as they spent many hours together sharing stories about faith, family and work.  Mr. Moore described Mr. Kumer's time spent with children coaching soccer and described his faith as one distinguished by service and love.

K. Kaster, another close friend, described Mr. Kumer's outreach to a low-income housing complex which housed many immigrant families, with sports activities including soccer, wrestling, basketball and other activities.  The outreach program remains active today.  He describes Mr. Kumer as "loyal, humble and compassionate." "He puts the needs of others ahead of his own."

J. Poulsen also wrote to the court expressing his observations of Mr. Kumer as "a genuine person to everyone he has come across."  Most importantly, he stated to the court that Mr. Kumer "will take ownership in this situation and never be a part of any further issues.  I know he is sorry for any trouble he has caused."

G. Alsano wrote a heartfelt letter on behalf of Mr. Kumer describing how he is a Sudanese immigrant who was moved to Kansas City from Uth when his older brother was murdered. He described lacking a support system until he met Mr. Kumer at a soccer practice in a low-income neighborhood. Mr. Alsano stated, "He welcomed me with open arms, never judging my past or my rough edges. Instead, he saw potential – the potential for transformation, growth and purpose." Mr. Alsano is now "paying it forward" by working with Mr. Kumer in the same apartment complex focused on mentoring teen boys, as Mr. Kumer did with him. This letter is a powerful testament to Mr. Kumer's true character.

### 2. The Nature and Circumstances of the Offense Support the Request for a Below Guideline Sentence

The Court is required to consider the nature and circumstances of the offense of conviction, 18 U.S.C. § 3553(a)(1), as well as the advisory guideline as calculated, 18 U.S.C. §§ 3553(a)(3) and (a)(4). The Court also is required to consider the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense. 18 U.S.C. § 3553(a)(2)(A).

This case involves Mr. Kumer's participation in the events surrounding January 6, 2021. He acknowledges the serious nature of the offense and the extent of the harm caused by his conduct. To be clear, Mr. Kumer objects to ¶ 33 to the extent that it implies he took a photograph of the police line and must have observed the physical injury to D.H. Also, ¶ 41 is objected to as this paragraph omits a key action by Mr. Kumer when he actually assisted another officer (known to be M.F.) in moving him towards safety of his fellow officers. (See, video clip Just Another Channel at 1:24:3. Mr. Kumer can also be seen attempting to stop an

individual from striking a different officer. (See, video clip 4.1 20210107-CDU_54-CAPITOL_[Toran BWC 3] at 1:35.1

Mr. Kumer understands that he must be punished for his actions. However, this punishment should be proportional to the nature of the offense conduct, as well as Mr. Kumer's background and true acceptance of responsibility. Mr. Kumer's remorse is sincere. He understands there is no excuse for his criminal conduct. However, as discussed in further detail, he asks the Court to take into consideration the following mitigating circumstances.

### 3. The Need to Protect the Public From Future Crimes by the Defendant.

The Court is required to consider whether a particular sentence is necessary to protect the public from further crimes of the defendant. 18 U.S.C. § 3553(a)(1)(C). A review of Mr. Kumer's history should provide the court with confidence that it is exceedingly unlikely that he will reoffend. The defendant's lack of a significant criminal record, and the fact that he was classified in criminal history category I, supports a finding that the public is adequately protected from future crimes by the defendant if granted a below guideline sentence.

### 4. The Need to Afford Adequate Deterrence to Criminal Conduct.

The Court is required to consider what type of sentence is needed to afford adequate deterrence to criminal conduct. 18 U.S.C. § 3553(a)(2)(B). A felony prosecution and federal conviction demonstrates to this defendant and others that this type of conduct will not be tolerated. Additionally, the collateral consequences of the conviction could be significant.

---

1 The video clips referenced herein will be forwarded to the Court and may be played at sentencing, if necessary.

However, a below guideline sentence is more than adequate to deter Mr. Kumer from committing this type of offense in the future. The fact that this matter was criminally prosecuted as a felony serves as a significant deterrent.

> 5. **The Need to Avoid Unwarranted Sentence Disparities Among Defendants with Similar Records Who Have Been Found Guilty of Similar Conduct.**

At the change of plea hearing for Mr. Kumer, this Court asked for any sentencing memorandum to compare sentences in which the offense conduct occurred in the lower west tunnel. The first example of proportionality is referenced in ¶¶ 47-48 regarding Mr. Peterson's sentencing. Other comparisons for a proportionality analysis under 18 U.S.C. Sec. 3553(a)(6) include references that are also cited in Defendant Stover's Sentencing Memorandum (Doc. 133 at p. 25). For example, in *United States v. Preller*, 1:23-CR-00045-TNM, the Defendant was part of a militia group who apparently pushed against officers in the tunnel on repeated occasions. The defendant even boasted about his actions on social media. *See United States v. Preller*, 1:23-CR-00045 at Doc. 90 (Govt. Sentencing Memo). And yet, this defendant was sentenced to 60 months of *supervised release*, 40 hours' community service, and $2,000 restitution.

Further, in *United States. v. White*, 1:21-CR-00563-JDB, the Defendant raised up another person inside "the tunnel" and even cheered aloud as he kicked law enforcement officers. *Id.* at Doc. 89, Govt. Sentencing Memo at 2. This defendant forced her way to the front of the line, where she participated in pushes against the line and engaged in more pushing against the people assembled. To be clear, this defendant prevented another person from breaking a window. *Id.* at 5. Once she got inside the tunnel, she pushed her way to the

14

front of the line and engaged with the police. However, the Gov't Sentencing Memo notes that "White pushed against the walls, the officers, and their shields, another officer used a baton to get her to stop." *Id.* at 12. The law enforcement officers were required to physically extract her from the line of people. According to the Gov't Sentencing Memo at 15, 16, she even told law enforcement interviewers "she had done nothing wrong." Significantly, this defendant was still sentenced to 8 days' intermittent confinement, 3 months' home detention, and 24 months' probation.

Another comparison arises in *United States. v. Hazelton*, 1:21-CR-00030-JDB which is referenced above. This Defendant shouted and urged the crowd to push forward towards the police, with words comparing these efforts to war-like actions in the American Revolution. See, Doc. 56, Govt. Sentencing Memo. Her actions as described in the Gov't Sentencing Memo at p. 3 were done with the purpose of overthrowing the federal government. *Id*. At 3. The Gov't Sentencing Memo contended that after January 6th - between January 14 and 20, 2021 – the defendant indicated she was taking steps to cover up any evidence of her crime. *Id.* Interestingly, this defendant was sentenced to 10 days' incarceration, 90 days' home detention, 24 months' supervised release, and $2,000 restitution.

In *United States. v. Cole*, 1:23-CR-113-TNM, the Defendant was a member of a militia group, the Guardians of Freedom. *Id.* at Doc. 82, Govt. Sentencing Memo at 2. After engaging in several pushes against law enforcement personnel in the tunnel, the defendant then taunted the FBI on social media. *Id.* at 7-8. Cole also carried a baton. *Id.* at 10. He

15

was sentenced to 14 days' confinement, coupled with 48 months' probation and 3 months' home detention with 40 hours' community service, and $2,000 restitution.

In addition, in *United States v. Sirr*, 1:22-CR-00259-TNM, the defendant apparently participated in a "heave ho" type push against the law enforcement officer line. *Id.* at Doc. 53, Govt. Sentencing Memo at 2. The defendant returned into the tunnel after making a video of an assault. This defendant also made inappropriate posts to social media before the January 6, 2021 events. *Id.* at 12-14. Mr. Sirr was sentenced to 2 months' incarceration, 12 months' supervised release, and $2,000 restitution.

In *United States v. Stecher*, 1:21-CR-00720-RDM, the defendant entered the tunnel on more than one occasion and even worked his way to the front of the police line. This defendant even urged others by shouting "If we can't push them, drag 'em!" *Id.* at Doc. 57, Govt. Sentencing Memo at 12. Mr. Stecher was sentenced to 60 days' incarceration, 24 months' supervised release, and $2,000 restitution.

And, finally, in *United States v. Giberson,* 1:23-CR-00115-CJN, the defendant's conduct occurred in the tunnel area of the Lower West Terrace. Mr. Giberson was involved with pushing and "heave ho" actions. He also ushered others into the tunnel area. See, Doc. 26, Gov't Sent. Memo. This court imposed two months of incarceration, followed by a supervised release term of six (6) months to be served as Home Detention, $2000 restitution and a $100 special assessment. His sentencing range was 8-14 months within Zone B.

  **6.**  **The Need to Provide Restitution.**

Mr. Kumer respectfully references his anticipated full restitution payment of $2,000. This payment exemplifies his acceptance of responsibility. The defendant recognizes that his

16

restitution is only a portion of the overall loss, but it represents his full obligation under the Plea Agreement. The Eighth Circuit has recognized that extraordinary restitution efforts may provide a basis for a downward departure. *See, e.g., United States v. Oligmueller*, 198 F.3d 669, 672 (8th Cir. 1999) ("We have previously held that cases can fall outside the heartland when there are extraordinary efforts at restitution."); *United States v. Garlich*, 951 F.2d 161, 163 (8th Cir. 1991). The Tenth Circuit has also recognized that exceptional remorse and related factors can support a downward departure or can be considered by the sentencing judge. *See, United States. v. Fagan*, 162 F.3d 1280 (10th Cir. 1998). The *Garlich, supra, and Oligmueller, supra*, cases provide support for a departure or variance, or even as general evidence of acceptance of responsibility. Otherwise, there is no distinction between a defendant who makes restitution efforts and those countless defendants who do not.

### 7.     Remaining 18 U.S.C. § 3553(a) Factors

Mr. Kumer's criminal conduct was an aberration in a life otherwise devoted to his wife and family and to the youth of the Kansas City area. A non-custodial sentence will undoubtedly satisfy the statutory objective of providing "just punishment for the offense" to which he pleaded guilty in this case. The likelihood that Mr. Kumer will commit other criminal acts in the future is virtually nonexistent. Given his lack of criminal history, the fact of the prosecution, the time he has been under pre-trial supervision, a non-custodial sentence will deter Mr. Kumer from future criminal conduct. Mr. Kumer has abided by all conditions of release and has not committed any pre-trial supervision violations during the 10 months he has been supervised in this case. His background demonstrates he is stable and able to comply with the rules of society. Importantly, even if the Court imposes a non-custodial sentence,

Mr. Kumer will have a felony conviction. The goal of deterrence and punishment will still be satisfied.

The requested non-custodial sentence also satisfies the related statutory objectives of general deterrence and protection of the public. Mr. Kumer recognizes the importance of these objectives, and he recognizes the impact of his conduct on society. The fact that Mr. Kumer was criminally charged, pled guilty, and now carries a felony conviction is a general deterrent. Imprisonment is not always required to deter others from criminal conduct. The anticipated publication and press release announcing the felony conviction, and its consequences, and the order of restitution, will adequately deter others who may be considering similar conduct.

Mr. Kumer has cooperated fully in bringing this matter to a close, and he is a worthy candidate for a non-custodial sentence. Mr. Kumer's willingness to enter a plea has saved substantial resources for the government.

V.     **CONCLUSION**

Mr. Kumer fully accepts responsibility for his criminal conduct. He has not and will not diminish or excuse his actions. For the reasons stated in this memorandum, Mr. Kumer respectfully requests a sentence of probation or a non-custodial sentence with conditions the Court deems appropriate. Whatever advisory guideline range that is set by this court is just the starting point. The ultimate objective is to impose a sentence that is "not greater than necessary" to achieve the goals set out in 18 U.S.C. § 3553(a). A probation or other non-custodial sentence satisfies this objective.

Respectfully submitted,

WYRSCH HOBBS & MIRAKIAN, P.C.

By:    /s/ James R. Hobbs
      JAMES R. HOBBS DC #MO0022
      One Kansas City Place
      1200 Main St., Suite 2110
      Kansas City, Missouri 64105
      Tel:  (816) 221-0080
      Fax:  (816) 221-3280
      jrhobbs@whmlaw.net

*ATTORNEYS FOR DEFENDANT*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 14th day of May, 2024, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which sent notification of such filing to all counsel of record.

     /s/ James R. Hobbs
     *ATTORNEY FOR DEFENDANT*